# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BANK OF AMERICA, N.A.,

    Plaintiff,

vs.

ESPLANADE AT DAMONTE RANCH HOMEOWNERS' ASSOCIATION et al.,

    Defendants.

3:16-cv-00116-RCJ-VPC

**ORDER**

This case arises from the foreclosure of a residential property pursuant to a homeowners association lien. Now pending before the Court are two Motions for Summary Judgment. (ECF Nos. 24, 29.) For the reasons given herein, the Court grants summary judgment for Plaintiff Bank of America.

## I. FACTS AND PROCEDURAL BACKGROUND

On or about September 26, 2008, non-party German Pineda purchased a home located at 1945 Wind Ranch Road #A, Reno, Nevada, 89521 ("the Property"), subject to the Covenants, Conditions, and Restrictions ("CC&Rs") of Defendant Esplanade at Damonte Ranch Homeowners' Association ("the HOA"). (Compl. ¶¶ 6, 12, ECF No. 1.) The Deed of Trust ("DOT") identified Bank of America as lender and beneficiary, PRLAP, Inc. as trustee, and a secured amount of $225,832. (Deed of Trust, ECF No. 27-1.)

/ / /

On September 8, 2009, Defendant Angius & Terry Collections, LLC ("ATC")—as the HOA's agent—recorded a Notice of Default and Election to Sell against the Property, due to Pineda's failure to pay HOA dues. (Compl. ¶ 15; Notice of Default, ECF No. 24-3.) On September 9, 2010, ATC recorded a Notice of Sale against the Property. (Compl. ¶ 16; Notice of Sale, ECF No. 24-4.) The Notice of Sale indicated that unless the HOA's lien was satisfied, a foreclosure sale would take place on October 1, 2010, at 11:00 AM.

On the morning of October 1, 2010, ATC sent an email to the company conducting the foreclosure sale. (Sale Instruction Email, ECF No. 24-1.) The email stated:

> [ATC] has a foreclosure sale scheduled for today in Washoe County, Nevada. We have received a clear date down from our title company. You are instructed to proceed with the sale. The opening bid is to be: $2,592.71.
>
> *The person crying the sale must announce the following:*
>
> *"You are hereby being notified by the Association, the beneficiary, through its foreclosure agent, that the opening bid does not include the super-priority lien amount. That the super-priority lien amount will still be a lien on the property once the sale is completed. You are hereby being notified by the Association, the beneficiary, through its foreclosure agent, that said lien may affect the property, title to the property or value of the property. The purchaser buys this property with full knowledge and understanding of same."*

(*Id.* (emphasis added).) The HOA then purchased the Property at the foreclosure sale, by credit bid in the amount of $2,592.71, despite an appraised value of $177,000. (Foreclosure Deed, ECF No. 24-5; Appraisal Report, ECF No. 27 at 5–8.) On December 10, 2013, ATC recorded the foreclosure deed, which expressly conveyed to the HOA "only that portion of [the HOA's] right, title and interest secured by the non-priority portion of its lien under NRS 116.3116 . . . ." (*Id.*) The foreclosure deed further provided that the HOA, as grantee, purchased the Property "by satisfaction, pro tanto, of the obligations then due and payable to association claimant *in excess of the Super-Priority Lien set forth in NRS 116.3116 et seq.*" (*Id.*)

Notwithstanding the unequivocal limitation on the title it acquired at the foreclosure sale, on December 12, 2013, the HOA attempted to re-record its trustee's deed to "correct the verbiage" in the deed and extend the foreclosure of its lien, post hoc, to include both the subpriority and superpriority portions. (Am. Foreclosure Deed, ECF No. 27-6.) The HOA simply removed any language that limited the scope of the foreclosure to the subpriority lien only, and re-recorded the deed. The same day, December 12, 2013, the HOA transferred its interest in the Property to Defendant Thunder Properties, Inc. ("Thunder") by quitclaim deed. (Quitclaim Deed, ECF No. 27-8.)

Bank of America alleges four causes of action in its Complaint: (1) quiet title/declaratory judgment against all Defendants; (2) breach of N.R.S § 116.1113 against the HOA and ATC; (3) wrongful foreclosure against the HOA and ATC; and (4) injunctive relief against Thunder. The HOA and Bank of America have both moved for summary judgment. (ECF Nos. 24, 29.)

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v.*

*Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III. ANALYSIS

#### A. Bank of America's Interest Was Never Extinguished

The HOA and Bank of America are in agreement that the foreclosure sale did not extinguish the DOT because only the subpriority portion of the HOA's lien was foreclosed. However, Thunder argues that "it is factually impossible for an HOA to foreclose upon only the sub-priority portion of its lien, even if it desired to do so." (Resp. of Thunder 9, ECF No. 26.)

The Supreme Court of Nevada has not directly addressed whether an HOA has two liens that it can enforce independent of one another, but it has described the statutory scheme governing HOA foreclosures as follows:

> As to first deeds of trust, NRS 116.3116(2) . . . splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

*SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 411 (Nev. 2014). In *SFR*, the Court was not confronted with the question of whether an HOA could split its lien and non-judicially foreclose on one piece but not the other. It is thus unclear from this language whether the HOA has a single lien that is split into two pieces for the limited purposes of payment and determining priority with respect to the first deed of trust, or whether the statute splits the lien into two separately enforceable pieces.

One court in this District has addressed the question, however, and this Court agrees with its reasoning and conclusion. *See Laurent v. JP Morgan Chase, N.A.*, No. 2:14-cv-00080, 2016 WL 1270992, at *4–7 (D. Nev. Mar. 31, 2016) (Gordon, J.). First, in Nevada, "it is the intent of the parties to a deed which . . . must determine the nature and extent of the estate conveyed." *Id.* (citing *City Motel, Inc. v. State ex rel. State Dep't of Highways*, 75 Nev. 137, 141, 336 P.2d 375, 377 (1959)). Here, the HOA was both grantor and grantee. (Foreclosure Deed, 27-5.) Thus, the HOA's express instructions to the foreclosure sale crier and the corresponding limitations in the originally recorded foreclosure deed provide clear evidence of the HOA's intent to foreclose only its subpriority lien. It is also the HOA's current position that its superpriority lien was not foreclosed and the DOT was not extinguished. (Mot. Summ. J. 3–5, ECF No. 24.)

Moreover, as Judge Gordon noted in *Laurent*, the Uniform Common Interest Ownership Act of 1982 ("UCIOA"), which the Nevada Legislature adopted in enacting NRS Chapter 116, contemplates an "equitable balance" whereby HOAs can enforce the collection of unpaid assessments and lenders can have the opportunity to protect their secured interests from extinguishment. 2016 WL 1270992, at *7. A finding that the HOA foreclosed its superpriority lien in this case would contravene that balance, because it would have a devastating effect on Bank of America's opportunity and ability to protect its DOT.

> The pre-auction announcement that the super-priority lien was not being foreclosed on would have impacted who bid on the property and how much. Specifically, a reasonable first deed of trust holder, upon hearing the announcement, would assume its secured interest was not in jeopardy because only a junior lien was being foreclosed. The first deed of trust holder therefore would not be incentivized to bid to protect its security interest. Additionally, the announcement would have affected other bidders' decisions on whether to bid and in what amount. Changing the terms of the auction post-sale would be unfair to both the first deed of trust holder and other potential bidders.

2016 WL 1270992, at *7.

Therefore, consistent with the HOA's intent as reflected in the pre-auction announcement and the originally recorded foreclosure deed, the Court finds that the HOA foreclosed only the subpriority portion of its lien. The interest the HOA acquired at the foreclosure sale was subject and subordinate to Bank of America's DOT. Accordingly, the Court grants summary judgment on the quiet title claim in favor of Bank of America.

### B. Thunder Is Not a Bona Fide Purchaser

Thunder argues it is a bona fide purchaser for value without notice ("BPF"), and that the Court should therefore rule that it took title free of the DOT. (Resp. of Thunder 26–28, ECF No. 32.) A BFP is a person who pays money for real property before obtaining notice of an earlier interest in the property. 5 Tiffany Real Property § 1262 & n.39.50 (3rd ed. 2015). The traditional common law rule of competing interests in real property is "first in time, first in right." 11 Thomas, *supra*, § 92.03, at 97 (citing Ralph W. Aigler, The Operation of the Recording Acts, 22 Mich. L. Rev. 405, 406 (1924) ("first in time was first in right because there was nothing left for the second transferee")). The equity courts created exceptions to the traditional "first in time, first in right" rule. *Id.* § 92.03, at 98. Under the common law, an earlier claim had priority over a later claim if both claims were legal claims (as opposed to equitable claims). *Id.* § 92.03, at 97. The same was true if both claims were equitable. *Id.* BFP status only mattered under the common law where the purported BFP had a legal claim and a competing earlier claim to the property was purely equitable. *Id.*

Today, the difference between legal and equitable claims does not matter as much as the policies behind recognizing BFP status (or not) in particular circumstances, and BFP-type exceptions to the common law rule of priority are governed by recording statutes, in any case. *Id.* § 92.03, at 98–99. Recording statutes are categorized as "race," "notice," or "race-notice" statutes. *Id.* § 92.08, at 158. Under notice statutes, an exception to the traditional "first in time"

rule is codified for those who give value for an interest in land "without notice or knowledge" of an earlier competing interest. *Id.* § 92.08(b). Race-notice statutes additionally require the later grantee to record his interest before the earlier grantee. *Id.* § 92.08(c). Where notice matters, as under notice and race-notice statutes, one who takes title without warranty can be found to have had inquiry notice of prior unrecorded interests (and therefore not qualify as a BFP), because a grantor's refusal to issue standard warranties of title should put a reasonable and prudent person on notice of potential competing interests. *Id.* § 92.09(c)(3)(C), at 191.

Nevada has a race-notice statute. *See* Nev. Rev. Stat. § 111.325 ("Every conveyance of real property within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his or her own conveyance shall be first duly recorded."). In other words, a later-obtained interest can prevail over an earlier-obtained interest in Nevada where the later purchaser has no knowledge of the previous interest and records his interest first. It is not genuinely disputed that neither of these elements is satisfied here. Thunder had constructive notice of the DOT at the time it acquired its interest in the Property because the DOT had been recorded, *see* Nev. Rev. Stat. § 111.315, and the quitclaim deed by which Thunder obtained its interest in the Property was of course not recorded before the DOT.

The remaining question is whether Thunder is a BFP as against the fact that the HOA's superpriority lien was never foreclosed, and thus the DOT was not extinguished. The general BFP rule in Nevada is:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1). Even assuming the issue were whether Thunder had notice not only of the DOT but also of the legal possibility that the DOT might have survived the HOA foreclosure sale, Thunder was not an innocent purchaser. Thunder was on inquiry notice of the continuing vitality of the DOT, especially considering that: (1) the original foreclosure deed expressly provided the HOA's superpriority lien had not been foreclosed; (2) the foreclosure deed indicated a sale price that was but a tiny fraction of the Property's appraised value; (3) the HOA acquired its interest in the Property without warranty; and (4) Thunder took title to the Property without warranty, by quitclaim deed. *See Berge v. Fredericks*, 591 P.2d 246, 249–50 (Nev. 1979); 11 Thomas, *supra*, § 92.09, at 163 ("Persons who knew about or could have discovered the existence of prior adverse claims through reasonable investigations should not be protected."). A buyer who takes title without warranty does not qualify as a BFP, because a grantor's refusal to issue standard warranties of title puts a reasonable and prudent person on inquiry notice of any competing interests. *See* 11 Thomas, *supra* § 92.09(c)(3)(C), at 191. And any inquiry to the HOA alone was insufficient as a matter of law. *See id.* (noting that "reliance upon a vendor, or similar person with reason to conceal a prior grantee's interest, does not constitute 'adequate inquiry'"). Thunder cannot be said to be a BFP as against the DOT under these circumstances.

### C. Plaintiff's Claims for Violation of NRS 116.1113 and Wrongful Foreclosure

In its prayer for relief, Plaintiff requests primarily a declaration that Thunder purchased the Property subject to its DOT. The other relief requested—with the exception of the injunctive relief discussed below—is phrased in the alternative. Therefore, because the Court grants summary judgment for Plaintiff on its quiet title claim, Plaintiff has received the relief it requested. Accordingly, the Court dismisses Plaintiff's second and third causes of action as moot.

### D. Injunctive Relief

In its fourth cause of action, Plaintiff requests a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests. The Court's grant of summary judgment for Plaintiff moots this claim, and it is therefore dismissed.

## CONCLUSION

IT IS HEREBY ORDERED that the motion for summary judgment (ECF No. 24) is DENIED.

IT IS FURTHER ORDERED that the motion for summary judgment (ECF No. 29) is GRANTED. Bank of America shall submit a proposed form of judgment within fourteen days of this order's entry.

IT IS SO ORDERED.

DATED: This 23rd day of May, 2017.

_____
ROBERT C. JONES
United States District Judge